## Louisville & Nashville Railroad Company v. Tolliver.

(Decided June 2, 1931.)

ASHBY M. WARREN, L. E. HARVIE, D. I. DAY, JESSE MORGAN and C. S. LANDRUM for appellant.

HAWK & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

On the 26th day of September, 1910, Robert Yonts and wife, James Yonts and wife, and Arch Meade and wife, conveyed certain lands situated in Letcher county, Ky., to James Frazier, James P. Lewis, M. D. Lewis, and George Hall. On the 20th day of April, 1914, the vendees in the above deed conveyed the land to the Letcher County Coal and Improvement Company, a corporation. On the 19th day of July, 1916, this corporation conveyed to James H. Frazier the land claimed in this action by

the appellee, Sarah Tolliver. On the 26th day of November, 1918, the land was conveyed by James H. Frazier and wife to Marion Tolliver and wife, the appellee, Sarah Tolliver. Afterwards, Marion F. Tolliver departed this life. His undivded one-half interest in the land was sold by the master commissioner of the Letcher circuit court on the 5th day of September, 1922, when the appellee, Sarah Tolliver, became the purchaser of this one-half interest. In May, 1915, the Louisville & Nashville Railroad Company contracted with the Letcher County Coal & Improvement Company for the land involved, and known as "both legs of the 'Y' (R. R. Y.)." The appellant brought suit to compel the vendor to execute deed. Louisville & N. R. R. Co. v. Letcher County C. & I. Co., 195 Ky. 298, 243 S. W. 5. The railraod company built thsi Y before September 23, 1913. The Louisville & Nashville Railroad Company obtained its deed April 24, 1923, after the opinion in the case supra, to the right of way on which the Y was constructed. The right of way is 25 feet wide, lying 12½ feet on each side of and parallel with and adjoining the center line of the main track of Yonts Fork spur, "beginning at a point where the center line of the main track crosses the boundary of the right of way of Right Fork Spur, the beginning point, at or near Construction Section 156 of the center line of the main track of Yont's fork running thence in a northern direction up Yont's Fork embracing a width of 12½ feet on each side of and parallel with and adjoining the center line of Yont's Fork spur, a distance of 866 feet."

The land conveyed to appellee lies within the Y. At the time the appellant and appellee became the owners of their respective land and entered upon and took actual possession of it, the town of Neon in which their land is situated was not an incorporated town. It was incorporated by order of the Letcher circuit court August 19, 1916. Afterwards streets were laid off and established. At the time the deed from Yonts and wife was executed and delivered to Lewis and others it was farm land, occupied and used by Yonts for farming purposes. Subsequent to the deed dated September 26, 1910, of Robert Yonts and others to James H. Frazier, James P. Lewis, M. D. Lewis, and George Hogg, and prior to appellant's acquisiton of title to the land on which the Y was constructed and before its construction, George Hogg erected two buildings on the land which were within the Y after

it was constructed. One building was then and now a business house, and the other a business house with a residence in the second story and side room. A third building, called a feed building, was subsequently erected.

The appellee filed this action wherein she alleged that her property lies "adjacent to the land and on the North and South sides of North First street" in the town of Neon, between the east and west legs of the Y upon which the appellant maintains its line of tracks, and that without her consent, and without the consent of the authorities of the town of Neon, it entered on North First street at a point where it crosses its Y and wrongfully set a number of metal posts in the ground, thereby preventing her and the other citizens of the town from having free access to, and use of, that portion of North First street between her business house and her home, and the remainder of the town. This is a second appeal of this case. Tolliver v. L. & N. R. R. Co., 226 Ky. 132, 10 S. W. (2d) 623, 625.

On the first trial in the circuit court the court refused to permit the plaintiff, the appellee here, to introduce evidence tending to show that the passway claimed by her to be North First street had been established and acquired as a public highway or road by prescription, before the town was incorporated. In disposing of the question this court said:

"There is evidence tending to show that the plat of the town of Neon was made before the town was established by judgment of the circuit court, and that a dedication of this particular street in controversy was shown by the plat. Whether that is true or not, if it can be established by evidence that the owners of the property dedicated this particular way to the public generally and the public accepted the dedication by a continued use of the street as a matter of right, the town did not have to accept the dedication before the public would have any rights thereunder. It is established by the evidence that this street was left open between the buildings belonging to appellant, and that it was recognized as an extension of North First street. The public accepted that dedication, and the road has been used since the organization of the town, and prior thereto. This appears to be shown by the evidence, and, if it is, then, a private individual may not deprive the

public of its easement or right to use the road so dedicated. It makes no difference whether the easement is called a road, passway, or street. The easement is the right to use the particular land dedicated for a particular purpose. That an acceptance of the dedication by the city is not necessary to vest in the public the right which it has to use the easement is clearly decided in the case of Volpenheim et al. v. Westerfield, 216 Ky. 157, 287 S. W. 545, and the authorities therein cited.''

On the second trial the circuit court, following the rule stated by this court supra, permitted the evidence to be heard. The jury was instructed and returned a verdict for appellee, fixing her damages at the sum of $2,500, on which a judgment was rendered, and from which this appeal was taken.

For reversal, the appellant insists (1) that it was entitled to a peremptory instruction; (2) the court admitted incompetent evidence; (3) the damages are excessive; (4) the instructions given by the court to the jury are erroneous.

From our view of the case the first ground for reversal will have to be sustained. It is not deemed necessary to set out the testimony of every witness introduced by the appellee and the appellant. Yonts and wife conveyed the land which appellee now owns to James Frazier and others in 1910. The evidence satisfactorily establishes that, during the ownership and occupany of Yontses, their land was used for farming purposes and was under fence, except when the fence was washed away by high water. The testimony of W. B. Collier is typical of that of the others introduced by appellee. His evidence is as follows:

"Q. Now you are acquainted with James Yonts who sold the property to Lewis, Hogg and Frazier? A. Yes, sir.

"Q. And where the town of Neon is located on the farm he lived on? A. Yes, sir.

"Q. Did he keep that property fenced up where the town of Neon is? A. Yes, sir, most of the time he did.

"Q. He farmed on it? A. Yes, sir, in the summer time he would, he kept it fenced up most of the time.

"Q. And right where this Y is is all inside of his fence? A. Inside of the boundary, yes, sir.

"Q. And the property was fenced up by him? A. Yes, sir, most of the time, water would wash it out and he would let it lay a long time and then fenced it back up off and on that way. . . .

"Q. Mr. Collier, do you mean to tell the jury there was a public road where these two buildings are when Mr. Yonts lived there? A. I said it was a path.

"Q. You know what a public road is? A. Yes, sir, well it was a private way, this was a private passway for people afoot.

"Q. Afoot? A. Yes, sir.

"Q. Walked through the old man's field? A. Yes, sir, when the water was up and the roadway went through in the creek and couldn't hardly get out a foot and they would go through that way and had a padded road through up to the main road where Mr. Yont's house was to go out to the main street.

"Q. They just went through his field? A. Yes, sir.

"Q. Wagon didn't go through? A. No, sir, not that I know of."

The evidence falls far short of showing a prescriptive right of appellee or the general public to use the roadway where North First street is claimed to be crossed by the Y of the appellant.

The evidence of a dedication of the passway where North First street is located is equally as insufficient to establish her right. The alleged dedication was attempted to be established by the testimony of Frazier, which is to the effect that, when he purchased the lots now owned by the appellee from the Letcher County Coal & Improvement Company, it was agreed between that company and himself that the street should remain open between the two buildings now owned by the appellee, and designated in this record as North First street. Even if the dedication was attempted to be made and was thereby made of the street claimed by the appellee, it occurred subsequent to the acquisition of ownership of the appellant and while it was in actual possession, use, and occupancy of its Y. A dedication of its property could not be so made by third parties without its knowledge

or consent. Some of the witnesses in behalf of the appellee in stating the time the right of way now known and claimed to be, North First street stated that it had been used by the general public for different periods for more than fifteen years, before the time of trial. This was the length of time some of the witnesses state in their opinion it had continued to be used as a public road, but such opinion evidence is not sufficient to overcome the positive testimony that, while Yontses owned the land deeded to appellee's vendors in 1910, it was under fence and used as farm land except during the time of high water which would wash away the fence, and then it would be refenced and cultivated. The evidence establishes that, during the time of high water and immediately following pedestrians and horseback riders used a passway through the field of Yontses to dodge the high-water and its interruption of the use of the public highway which passed some three hundred feet from what is now claimed to be North First street. This character of use of North First street was shown not to have been interrupted or hindered by the posts planted by appellant on its right of way where it crossed North First street. The law controlling the evidence on the issue now under consideration was stated in our former opinion. It was the law of the case at the time of trial in the circuit court. The appellee's evidence fails to measure up to the law of the case. For this reason, the court should have given the jury a peremptory instruction to find for appellant.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.